UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-22111-CIV-MARRA

KURT E. BOSSHARDT,

        Appellant,

v.

ALAN L. GOLDBERG,

        Appellee

_____/

## OPINION AND ORDER

THIS CAUSE is before the Court upon Appellant's appeal from the Order Denying

Defendant's Motion for Rehearing or for Relief from Judgment dated April 20, 2012 (hereinafter

"Bankruptcy Court Order") [DE 1].[1] The Court has carefully reviewed the appeal, all of the briefs

submitted by the parties[2], the Record on Appeal and is otherwise duly advised in the premises.

---

[1] As the Court noted in its Order Denying Appellee's Motion to Dismiss Appeal as Moot [DE 11], despite the fact that Appellant did not timely file a direct appeal of the Summary Final Judgment entered against him by the Bankruptcy Court, this Court can review the Bankruptcy Court's order denying Appellant's motion for relief from that summary judgment under Fed. R. Civ. P. 60(b). *Lairsey v. Advance Abrasives Co.,* 542 F.2d 928, 930-31 (5th Cir. 1976); *see Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981); *U.S. for Use of Duval Tile Supply, Inc. v. Byer Industries, Inc.,* 794 F.2d 1560, 1561 (11th Cir. 1986); *Carter By and Through Carter v. United States,* 780 F.2d 925, 927 (11th Cir. 1986).

[2] Appellant's Reply Brief, submitted by Appellant Pro-Se, exceeded the page limit for a reply brief, and misstated the issue before this Court as whether Section 475.011 of the Florida statutes exempts Appellant from the requirements of Florida Statutes Section 475.41. Nevertheless, the Court accepts the filing and reviewed it in connection with its analysis of this appeal.

## BACKGROUND

As noted in the Bankruptcy Court Order, the sole issue that was presented by Appellant in his motion was whether the $510,000.00 judgment entered against him was based upon a "mistake" made by the Court in calculating the damages [DE 2-9, 28].[3]  The Bankruptcy Court entered judgment in this amount after finding that Appellant was never entitled to receive a $510,000.00 real estate commission for representing a Buyer, because he was not a licensed broker under Florida law [DE 1, 3].

Debtor, Sol, LLC, d/b/a Sol Sotheby's International Realty, was a listing broker for the Seller; therefore, upon finding that Appellant had no right to any portion of the commission he received, the Bankruptcy Court's order and judgment permitted Appellee to avoid and recover on behalf of the Debtor the full amount that Appellant had received [Bankruptcy Case No. 09-02351-AJC, Doc 161,9 and Doc 162,2].  In Appellant's motion, he contended that half of the commission funds he received were not property of the Debtor's estate because the Debtor had a co-broker that was entitled to receive half of any commission that had to be disgorged by Appellant [DE 1, 3]. The Bankruptcy Court disagreed and denied Appellant's Motion for Rehearing or for Relief from Judgment [DE 1, 2].

## STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *In re Globe Manufacturing Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In*

---

[3] This is the only issue before this Court. Appellant has, in part, attempted to bring before this Court issues relating to an earlier summary judgment ruling of the Bankruptcy Court [DE 2, 9], which was affirmed on appeal by Judge K. Michael Moore [No. 11 Civ. 20718 (S.D. Fla. July 26, 2011]. This Court shall not address those issues as they are not before the Court.

*re Club Assoc.*, 951 F.2d 1223, 1228-29 (11th Cir. 1992).  "[A] bankruptcy court's interpretation of unambiguous contractual language is a legal determination subject to *de novo* review." *Id.* at 1229.

The Appellant's motion was brought pursuant to Rule 60(b) of the Federal Rules of Civil Procedure[4], which provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake . . . ." To overturn the denial of a Rule 60(b) motion, the decision to deny the motion must amount to an abuse of discretion. *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

### DISCUSSION

Regarding the Bankruptcy Court's findings of fact, the test is not whether a different conclusion could be drawn from the evidence, but whether there is sufficient evidence in the record to support the Bankruptcy Court's findings. *Matter of Bardwell*, 610 F.2d 228, 230 (5th Cir. 1980).[5]  The Court finds that there is no evidence in the record to support the Bankruptcy Court's finding that the entire $510,000.00 commission received by Appellant constituted property of the Debtor.

The Bankruptcy Court found that

> if the Debtor had not agreed to share half of the Commission with
> Bosshardt [Appellant], then the entire Commission would have
> been paid to the Debtor as broker on the listing/seller-side of the

---

[4] Rule 60 of the Federal Rules of Civil Procedure is incorporated into bankruptcy proceedings pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure.

[5] Fifth Circuit decisions entered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

> transaction . . . Whether the Debtor decides to in turn share or
> reallocate its portion of the Commission with cooperating brokers
> is up to the Debtor and those brokers. Any issues or rights as
> between the Debtor and third parties can be adjudicated as part of
> the claims allowance process or some other proceeding within the
> administration of the estate.

[DE 1, 4-5]. The Court finds no support in the record for the statement that the entire

Commission would have been paid to the Debtor. In fact, all of the evidence is to the contrary.

The Exclusive Right of Sale Listing Agreement, which determined the compensation to

be paid by the Seller to the Brokers, was entered into between the Seller and the following:

"Coldwell Banker, Jill Eber, Jill Hertzberg, Tim Elmes and SOL Sotheby's Realty, **(collectively**

**referred to as 'Broker' or 'Brokers')**." [DE 2-9,1, Emphasis Added]. The Listing Agreement

provides that compensation is to be paid to the "**Brokers**" as follows:

> In strict accordance with the terms of this Agreement, if the
> Property is sold, the cumulative commission to compensate **both**
> of the Brokers ("Commission") is a total of Six Percent (6.0%) of
> the purchase price.  The **Brokers** agree to determine amongst
> themselves the division of the Commission.

[DE 2-9, 2, Emphasis Added].[6]

The plain reading of this Agreement demonstrates that neither of the two listing brokers

had a right to all of the 6% commission. Furthermore, each broker was contractually obligated

---

[6] The Bankruptcy Court found that: "The Debtor's contractual agreement to share the Commission with Bosshardt [Appellant] was a transfer of its interest in property." [DE 1, p. 4, ¶ 6].  This statement is partially correct, but omits a material fact which leads to the Bankruptcy Court's ultimate erroneous conclusion that the Debtor had a property interest in the entire commission received by Appellant.  In fact, the Debtor *and Coldwell Banker's* contractual agreement to share the commission with Appellant was a transfer of *their* interest in the property. The Debtor could only transfer *its* interest in the commission to Appellant, which was not an interest in the entire 3% Appellant received.  The Bankruptcy Court neglected to consider Coldwell Banker's interest in this 3% when it rendered its decision.

under the Agreement to offer a total of 3% of the commission to a buyer's agent or broker [DE 2-9, p. 3, ¶ 8]. Thus, the express terms of the Listing Agreement demonstrates that the Debtor never had a contractual right to, or property interest in, the entire 6% commission.  To the extent the 3% of the commission that went to Appellant, as the buyer's agent, was to be forfeited because of legal irregularities, there is no legal or rational basis for concluding that the entire 3% of the buyer's agent's commission belonged to the Debtor.  Under the rationale of the Bankruptcy Court, it could just as easily be concluded that upon voiding the commission paid to Appellant, all of that amount would inure to the benefit of Coldwell Banker.[7]  Thus, the Bankruptcy Court's decision to attribute ownership of the entire 3% commission received by Appellant to the Debtor was completely arbitrary.

Moreover, the record below also conclusively demonstrated the amount of the forfeited commission that did, in fact, belong to the Debtor.  The document that established Appellant's contractual right to 3% of the commission is the "As Is" Contract for Sale and Purchase [DE 2-4, 86].  That contract clearly sets forth the contractual right of the remaining brokers to 1.5% each of the total 6% commission [DE 2-4, 87], and identifies the brokers as Kurt Bosshardt & Associates, P.A. (3%), SOL Sotheby's International Realty (1.5%) and Coldwell Banker Jill Eber (1.5%) [DE 2-4, 87, 88]. At the closing, the commission was distributed in a manner consistent with the sales contract, as set forth in the HUD-1 Settlement Statement [DE 2-4, 54] and the

---

[7] Although this Court bases its decision on its *de novo* review of the contracts at issue, it is interesting to note that the Record demonstrates that Coldwell Banker and the Debtor were co-brokers in every sense.  Appellant's first contact was with Jill Ebers of Coldwell Banker, who had a sign on the property [DE 2-3, 96]. Although Timothy Elmes, who worked with the Debtor, showed the property the first time, he testified that "The Jills" of Coldwell Banker attended one showing as well [DE 2-8, 82]. The Seller's Real Property Disclosure Statement was on a Coldwell Banker form [DE 2-7, 29].

Commission Receipts signed by the Debtor and Coldwell Banker [DE 2-4, 101, 102].

The Court, therefore, finds the Bankruptcy Court's factual conclusion that the Debtor was entitled to all of the commission forfeited by Appellant to be clearly erroneous because there is no evidence in the record to support it.  As a matter of law, the unambiguous contractual language of the Exclusive Right of Sale Listing Agreement established the total commission to be paid,[8] and the "As Is" Contract for Sale and Purchase provided that the Debtor and Coldwell Banker would split the commission equally.  Therefore, the Bankruptcy Court's legal conclusion that: "Under the Listing Agreement, if the Debtor had not agreed to share half of the Commission with Bosshardt, then the entire Commission would have been paid to the Debtor as broker on the listing/seller-side of the transaction", [DE 1, 4], is also erroneous.

The Court further finds the Bankruptcy Court's legal conclusion that  "[a]ny issues or rights as between the Debtor and third parties can be adjudicated as part of the claims allowance process or some other proceeding within the administration of the estate" to be erroneous. In a bankruptcy case, a Trustee may only seek to avoid a transfer "of an interest of the debtor in property . . . ." 11 U.S.C. §548(a). Simply because Appellant had no right to keep the entire $510,000.00 does not give the Trustee standing to avoid or recover any amount in excess of the Debtor's property interest. Nor does it give the Bankruptcy Court jurisdiction to act as arbiter of any potential dispute between Coldwell Banker and Appellant.[9]

---

[8]Although the allocation as among the brokers was not determined by the Exclusive Right of Sale Listing Agreement, it is unambiguous that the seller had an obligation to pay 6% of the sales price to the broker group.

[9] The powers of the Bankruptcy Court are delineated in 11 U.S.C. § 105. The court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S. C. § 105(a). Attending to the redistribution of $255,000 of the commission

## CONCLUSION

In light of these findings, the Court finds that the Bankruptcy Court's denial of Appellant's Motion for Rehearing or for Relief from Judgment to have constituted an abuse of discretion.  As a matter of law, the Debtor's property interest in the $510,000.00 received by Appellant as a commission was limited to 50% of this amount; therefore, Appellee was only entitled to avoid and recover $255,000.00.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the decision on appeal of the Bankruptcy Court **[DE 1]** is **REVERSED** and the Summary Final Judgment entered against Appellant and in favor of Appellee is reduced from $510,000.00 to $255,000.00.

This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of January, 2013.

 

_____
KENNETH A. MARRA
United States District Judge

---

received by Appellant to Coldwell Banker is beyond the scope of this provision.